**Hamidou SALL, Petitioner,**

v.

**Alberto GONZALES, Attorney General, Respondent.**

No. 02–4335.

United States Court of Appeals, Sixth Circuit.

Feb. 24, 2005.

E. Dennis Muchnicki, Dublin, OH, for Petitioner.

Allen W. Hausman, U.S. Department of Justice Office of Immigration, Washington, DC, for Respondent.

Before GUY and ROGERS, Circuit Judges; and DOWD, District Judge.*

ROGERS, Circuit Judge.

Hamidou Sall, a citizen of Mauritania, petitions for review of an order of the Board of Immigration Appeals ("BIA") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture. The BIA affirmed the Immigration Judge's decision without an opinion. Because substantial evidence supported the Immigration Judge's adverse credibility finding, as well as the Immigration Judge's alternative ruling that a fundamental change in country conditions removed the basis for Sall's fear of persecution, we deny the petition for review.

Sall entered the United States in December 1996. AR 72, 365. He applied for asylum in March 1997, and the Immigration and Naturalization Service initiated removal proceedings against him in January 1998. AR 365. Sall then amended his application in order to request withholding of removal under the Immigration and Nationality Act ("the Act") and the Convention Against Torture and, in the alternative, voluntary departure.

An Immigration Judge held a hearing in Sall's removal proceedings on June 13, 2000. Sall testified that in 1989, the Mauritanian government arrested him and six other people. All members of the group arrested were black. Sall testified that the group was arrested because "we were assumed to be belonging to ... political parties." JA 50. Sall testified he was beaten and forced to work. After ten months of detention, Sall alleges, his captors sent him to Senegal. He lived in Senegal until he traveled to the United States in 1996.

The Immigration Judge found that Sall was not credible, and that even if his testimony were believed, his claim still lacked merit because of a fundamental change in

* The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

country conditions in Mauritania. The Immigration Judge therefore denied all relief. In October 2002, the BIA affirmed without opinion the IJ's decision. Sall filed a timely petition for review.

Because the BIA affirmed without opinion, this court directly reviews the decision of the Immigration Judge. *See Denko v. INS,* 351 F.3d 717, 730 (6th Cir.2003). The Immigration Judge's findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude the contrary." 8 U.S.C. § 1252(b)(4)(B) (2001).

▪ Substantial evidence supported the Immigration Judge's adverse credibility ruling. First, Sall testified contradictorily, or at least vaguely, about the reason the Mauritanian government arrested him. He stated at one point that he was arrested because the arresting soldiers "assumed and they believed that we were part of the events[1] because probably we belonged to some parties." JA 49. Sall testified that no member of his family had belonged to a political party; shortly afterwards, however, he stated that his father may have belonged to a party because he "used to attend the meetings." *Id.* Sall provided no explanation as to why the Mauritanian government may have imputed political views to Sall's family.

Second, Sall's statements regarding his brothers lacked credibility. Sall has two brothers, Yerino and Salif. Sall testified at his removal hearing in 2000 that Yerino, a military officer, had died in 1990 or 1991, and that Sall had known about this as of 1991. However, a letter Sall's mother allegedly wrote to Sall from the refugee camp where she lives, admitted into evidence at his removal hearing, stated that Sall's mother had learned that Yerino was alive. The letter stated that both Salif and

Sall's father had died. Sall testified that he thought his mother had conveyed in her letter that Yerino, not Salif, had died. The Immigration Judge also based his adverse credibility determination in part on a suspicion that the return address and certain words in the letter from Sall's mother appeared to have been altered. The inconsistencies concerning the fate of Sall's brothers may suggest confusion, rather than lying, on Sall's part. Nonetheless, given that the treatment of Sall's own family members is pertinent to Sall's asylum application, the conflicting evidence on this subject detracts from Sall's credibility. *See Aruta v. INS,* 80 F.3d 1389, 1395 (9th Cir.1996) (finding that an absence of mistreatment of the applicant's family members is relevant to determining whether the applicant has a well-founded fear); *Sylla v. INS,* 388 F.3d 924, 926 (6th Cir. 2004) (holding that adverse credibility findings must be based on issues that go to the heart of the applicant's claim).

▪ Even if this court were to find Sall's testimony credible, Sall's petition for review must still be denied, because substantial evidence in the record supported the Immigration Judge's finding of changed country conditions. A State Department country conditions report for Mauritania for 1999 notes that, although the government has not acknowledged responsibility for extrajudicial killings during the events of 1989–1991, there were no reports of extrajudicial killings in 1999. JA 82. Further, of the approximately 70,-000 members of southern-based ethnic groups who fled or were expelled from Mauritania during the 1989–1991 crisis, observers estimate that between 33,000 and 65,000 have returned. *Id.* at 90. The government has stated since 1993 that any Mauritanian outside the country may re-

---

**1.** Sall did not explain during his hearing what he meant by "the events," but two State Department reports in the administrative record

refer to the extrajudicial killings in 1990–91 of hundreds suspected in an alleged coup attempt.

turn. *Id.* A State Department profile of asylum claims for Mauritania for 1997 notes that, while there continues to be some intimidation of Mauritanians from the south who cite their ethnic heritage as Afro–Mauritanian, "the extent of such abuses is limited." *Id.* at 115. Substantial evidence suggests that, since Sall's mistreatment in 1989–91, Mauritania has witnessed a fundamental change in country conditions, and Sall therefore no longer has a well-founded fear of persecution.

The Immigration Judge properly found that Sall's testimony lacked credibility; further, Sall offered little corroborating evidence to support his asylum claim. Therefore his asylum claim must fail. Sall did not raise on appeal the denial of his applications for withholding of removal under the Act and the Convention Against Torture; these claims are forfeited.

For the foregoing reasons, we deny the petition for review.